IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2009

## RENWICK ANDRE EARLS, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Blount County**
**No. C-17181      Michael H. Meares, Judge**

_____

**No. E2008-02565-CCA-R3-PC - Filed February 22, 2010**

_____

The petitioner, Renwick Andre Earls, Jr., appeals the denial of his petition for post-conviction relief. He entered a plea of guilty to the offense of second degree murder, a Class A felony, in exchange for a sentence of forty-years to be served as a Range II, multiple offender. On appeal, he argues that he received ineffective assistance of counsel which resulted in him entering an involuntary and unknowing guilty plea. After careful review, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Charles A. Carpenter, Maryville, Tennessee, for the appellant, Renwick Andre Earls, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Tammy M. Harrington, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case involves the shooting death of sixteen-year-old Tamir Shareef after the petitioner was told by his girlfriend that the victim had "hit on her." The petitioner, who was detained in the Blount County Juvenile Detention Center when he received this information, became upset and decided to kill the victim.

The State offered the following as proof during the guilty plea hearing. After school on the evening of his release, the petitioner, accompanied by Dorian Johnson, an eighteen-

year-old male, ran into the victim. The victim and Mr. Johnson spoke, but the victim did not speak to the petitioner. The petitioner perceived this as proof that what his girlfriend told him was true. Later that evening, the petitioner, the victim, and Mr. Johnson were at a home in Alcoa, Tennessee. Several witnesses gave statements to police that, in their presence, the petitioner and the victim had no direct confrontation about the situation regarding the petitioner's girlfriend. The petitioner did express his anger toward the victim to others, and they provided statements to the State. At some point in the evening, the petitioner woke the victim and Mr. Johnson and told them he wanted to go to a different house. The trio began walking down the street, and the petitioner cut through a back yard with the victim following him. Mr. Johnson said he heard gunshots and ran to the corner of the house where he observed the petitioner standing over the victim with a firearm. The victim died as a result of multiple gunshot wounds, including one to the head and two to the chest. Both the petitioner and Mr. Johnson fled the scene.

During the post-conviction hearing, the petitioner and his trial counsel testified. The State did not call any witnesses. First, trial counsel testified that he was appointed to represent the petitioner prior to the charges underlying this case. Trial counsel said that he arranged for the petitioner to undergo a psychological examination to determine whether the petitioner was competent to stand trial. He testified that he explained to the petitioner how he should conduct himself during the evaluation. He specifically told the petitioner that he was not to discuss the allegations regarding the murder charge. Trial counsel instructed the petitioner to say "no comment" or "I'm not going to talk about it" if asked about the charges. Trial counsel said that he repeatedly told the petitioner not to discuss the case and also visited him in the hospital before the examination to reaffirm his advice.

Trial counsel discussed the difference between first and second degree murder with the petitioner and provided him with copies of the law for each crime. He believed the petitioner understood the difference between the offenses. Trial counsel testified that Mr. Johnson hedged the truth during the transfer hearing and discussed his testimony with the petitioner. Trial counsel testified that the petitioner told him Mr. Johnson provided the murder weapon and that Mr. Johnson knew what was going to happen. He testified that the State did not know that information, but he did. He explained to the petitioner that, due to the overwhelming amount of information available to the State, it would be better to take the plea offer of forty years than to face the potential exposure at trial, which would be at least sixty years.

Trial counsel testified that he did not want to pursue the line of questioning too far with Mr. Johnson during the transfer hearing because he knew it would further implicate the petitioner. He said that if he forced Mr. Johnson to tell everything he knew, it would "implicate [the petitioner] perfectly and there [is] no way of escaping it." Trial counsel said

that he thought the petitioner would be convicted of first degree murder if they proceeded to trial. He testified that because the petitioner had a felony conviction on his record, he was facing life without the possibility of parole. Before they ever discussed the case, the petitioner told him that he was willing to plead to twenty-five years.

Trial counsel denied that he did not want to proceed to trial against the district attorney who handled the case because they were friends. He said that he tried many cases against that district attorney and considered all of the district attorneys as friends. He also denied telling the petitioner that his release eligibility would be eighty-five percent of his sentence.

Trial counsel testified that he did not hire an investigator because any facts that would be found would further inculpate the petitioner. Trial counsel testified that he believed he did a very good job of representing the petitioner and that he saved him a lot of years in prison.

Trial counsel recalled that the petitioner had between a month and six weeks to decide to accept the plea offer and that the petitioner talked to his parents on a regular basis.

On cross-examination, trial counsel testified that, during the mental evaluation, the petitioner confessed to planning the murder and told how he carried it out. He filed a motion to suppress the statement but never argued it because the petitioner entered a plea of guilty.

The petitioner testified that he was sixteen years old at the time of the commission of the offense. He said that even though he was smart, he did not apply himself in high school and graduated as a C or D grade student. He had no prior charges in "adult court" but had been involved in cases in juvenile court.

The petitioner testified that his chief complaint against trial counsel was that he did not inform him that statements he made during his mental evaluation could be used against him. He recalled that trial counsel told him they would ask him questions about his background in preparation for his mental evaluations. He further testified that counsel only told him not to talk about the case prior to the second of the two evaluations.

The petitioner also said that he did not understand the difference between first degree murder and second degree murder. He said that he did not grasp the concepts even though trial counsel tried to explain it to him. The petitioner said that, since his conviction, he had done a lot of research about his case in the law library and believed that trial counsel did not properly inform him about his case. He testified that he did not complain about trial counsel's representation at the time because he did not know any better.

The petitioner testified that he discussed Mr. Johnson's testimony during the transfer hearing. He also testified that he now knew Mr. Johnson was not a credible witness who could have been used to his benefit. Based upon trial counsel's statements to him, the petitioner believed that the State had a strong first degree murder case against him. The petitioner's law library research changed his mind, and he feels that trial counsel gave him incorrect advice. He also said that trial counsel told him that he was good friends with the Assistant District Attorney General and did not want to proceed to trial against her.

The petitioner testified that he wanted more time to discuss his plea agreement with his parents because he had only three days from the time of the transfer hearing until the day the plea was entered. He testified that his mother did not want him to take the plea offer and that she wanted him to be advised by other counsel.

The petitioner also said that he was under the impression that his release eligibility would be eighty-five percent with the possibility of reduction for good behavior. He testified that he believed an investigator would have been helpful to his case. He testified that he would not have entered the guilty plea if the things he testified about had been different. He opined that the State had a weaker case for first degree murder than he had initially believed. He testified that he was intoxicated at the time he shot the victim and that he now believed self-defense could have been raised because Mr. Johnson made a statement that the petitioner and the victim struggled over a pistol.

On cross-examination, the petitioner acknowledged that self-defense was not really an option because, during an evaluation, he provided a statement acknowledging that he cleaned the bullets so there would be no fingerprints on them and that he took the safety off the gun before he took it out of his shirt. The petitioner also agreed that he told the examiner the victim did not know what was coming. He also acknowledged that the judge advised him that his sentence would be at one hundred percent when he entered his plea.

The post-conviction court concluded that trial counsel was a credible witness and specifically accredited his testimony with regard to advising the petitioner to remain silent regarding his case during his mental health evaluations. The post-conviction court concluded that there was no credible proof that defense counsel was unwilling to go to trial because of an alleged friendship with the prosecutor and that the petitioner offered no proof other than his own testimony that trial counsel failed to explore or present other evidence. Finally, the post-conviction court determined that trial counsel and the trial court explained to the petitioner his release eligibility prior to entry of his plea.

Analysis

Initially, we note that a notice of appeal must be filed within thirty days after the date of entry of the appealed judgment. Tenn. R. App. P. 4(a). Here, the post-conviction court entered its written order denying relief on August 28, 2008. The petitioner filed his notice of appeal on October 29, 2008, beyond the thirty-day filing deadline. The State acknowledged that the notice of appeal is not jurisdictional and that the filing of the document may be waived in the interest of justice. Tenn. R. App. P. 4(a). The State argues that the "interest of justice" does not weigh in favor of waiving the timeliness requirement in this case. The petitioner does not offer an explanation for his late-filed notice of appeal, and the record does not appear to contain a motion to waive an untimely appeal. However, we will consider the appeal in the interest of justice.

The petitioner contends that he was denied the effective assistance of counsel. Specifically, he alleges that trial counsel failed to: inform him that statements made during his mental evaluation could be used against him; explain the difference between first degree murder and second degree murder; investigate thoroughly or hire an investigator; obtain additional time for him to consider the State's plea offer; and advise him that the poor testimony of one of the State's witnesses at the transfer hearing would be beneficial to his case at trial. In addition, he states that trial counsel did not want to try his case because counsel and the prosecutor were friends and that counsel improperly advised him that his release eligibility was eighty-five percent. The post-conviction court concluded that the petitioner failed to show by clear and convincing evidence that he had received ineffective assistance of counsel on these issues.

For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Second, the petitioner must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693 (1984). As to guilty pleas, the petitioner must establish that, but for counsel's errors, the petitioner would not have entered the plea and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This court will not disturb the findings of fact entered by the post-conviction court unless the evidence preponderates against them. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001).

Here, the petitioner failed to show that trial counsel's performance was deficient. Trial counsel testified that he repeatedly warned the petitioner that the statements made during his mental evaluation could be used against him. Trial counsel advised the petitioner to be forthcoming in talking about his background because that could be helpful in his defense, but he specifically advised him to answer "no comment" or state "I'm not going to

talk about it" when asked about the case. The post-conviction court specifically accredited the testimony of trial counsel, in part, because counsel recalled specific conversations with the petitioner and because trial counsel visited the petitioner in the hospital prior to his first mental evaluation and told him not to discuss the case.

The record also shows that trial counsel explained to the petitioner the difference in proof between first degree and second degree murder. Trial counsel testified that he provided the petitioner with the pertinent homicide statutes dealing with the degrees involved and reviewed with him the necessary proof that the State would have to demonstrate for each degree. The petitioner acknowledged that trial counsel reviewed this material with him and said that he did not really understand. The petitioner testified that trial counsel explained that first degree murder required the State to show premeditation. Because this reflects that trial counsel did review the material with the petitioner and that the petitioner understood the material, this issue is without merit.

Next, the petitioner contends that trial counsel's failure to hire an investigator was deficient performance. During the post-conviction hearing, trial counsel testified that he did not hire an investigator because "an investigator would find facts that would simply further inculpate [the petitioner]." The post-conviction court found that the petitioner offered "no proof" that the hiring of an investigator would have been of any assistance to trial counsel. The petitioner admitted he was not sure what information an investigator could have discovered. The petitioner has failed to demonstrate that he was prejudiced by trial counsel's decision not to hire an investigator.

Next, the petitioner contends that he was prejudiced by not having enough time to consider the plea offer. Trial counsel testified that the petitioner had between a month and six weeks to consider the State's offer and to discuss it with his parents. Trial counsel further testified that the petitioner never indicated that he needed or wanted more time to consider the offer. During the plea hearing, the petitioner told the court that he had been able to discuss the plea with his family. The petitioner has failed to demonstrate that trial counsel's performance was deficient.

The petitioner also argues that trial counsel was deficient for failing to utilize the poor performance of Mr. Johnson as a witness during the transfer hearing. Specifically, the petitioner contends that the poor testimony of Mr. Johnson would have strengthened his case at trial and argues that trial counsel did not adequately inform him about the change. The petitioner suggests that he was under the impression that the State had a very strong case and that he had to accept the plea offer. However, the petitioner has failed to demonstrate that trial counsel was deficient in this area. The petitioner told trial counsel that Mr. Johnson provided the gun he used in the murder. Trial counsel chose not to force Mr. Johnson to tell

"everything that he knew" because it would further implicate the petitioner and bolster the State's case that the murder was premeditated. The petitioner testified during the post-conviction hearing that trial counsel discussed with him Mr. Johnson's poor performance as a witness. However, the record reflects that trial counsel could not exploit the poor performance without the possibility of causing damage to the defense. The petitioner has failed to show deficient performance or prejudice with regard to this issue.

Next, the petitioner argues that trial counsel was ineffective because he allegedly told the petitioner that he did not want to try the case against the prosecutor assigned to the case because she was his friend. The post-conviction court found there was no credible proof that trial counsel was unwilling to go to trial because of an alleged friendship, and this finding is supported by the record. Trial counsel denied telling the petitioner that he did not want to try the case against the prosecutor because she was a friend. The record shows that trial counsel conducted a lengthy transfer hearing against the prosecutor on the petitioner's behalf. This issue has no merit

Next, the petitioner argues that trial counsel rendered deficient performance as it relates to his explanation of release eligibility. The post-conviction court found that both trial counsel and the trial court explained to the petitioner the percentage of service required on his forty-year sentence before sentence reduction credits could be earned. Trial counsel told the petitioner that the offer was for him to serve forty years and that there was only "a potential of getting a fifteen percent reduction" for good behavior. The petitioner acknowledged during his guilty plea submission hearing that the trial court repeatedly told him, "[Y]ou must serve 100 percent before you're eligible for release," and that he stated several times that he understood his release eligibility. Based on the foregoing, the petitioner failed to establish that trial counsel was deficient in this area.

The petitioner claims that he would have insisted upon going to trial but for these alleged deficiencies. The petitioner's own statements made the case against him and significantly limited his possible defenses. He testified that he accepted the plea offer because he believed that the case against him was strong. The case against the petitioner was strong, especially considering that the petitioner confessed to first degree premeditated murder during his mental health evaluation. The petitioner has not presented anything on appeal to reduce the strength of the State's case. The petitioner has failed to show that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases.

Next, the petitioner claims that his guilty plea was unknowing and involuntary. The post-conviction court denied this claim for relief because the petitioner failed to show that his guilty plea was unknowing and involuntary. Our supreme court has stated the following:

The cases of *Boykin v. Alabama* and *State v. Mackey* are the landmark constitutional cases for analyses of guilty pleas. *Boykin v. Alabama*, 395 U.S. 238 (1969) (federal standard); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977) (state standard). In *Boykin*, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. *Id.* at 242. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences.*" *Id.* at 244 (emphasis added).

Likewise, in *Mackey*, this Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea. . . ." 553 S.W.2d at 340.

*State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999).

To pass constitutional muster, a guilty plea must be made voluntarily, understandingly, and knowingly. *Hicks v. State*, 983 S.W.2d. 240, 246 (Tenn. Crim. App. 1998) (citing *Boykin,* 395 U.S. at 244); *see also Mackey*, 553 S.W.2d at 341. To determine the voluntariness and intelligence behind a guilty plea, the court must look to various circumstantial factors, including: the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

When looking at the totality of the circumstances surrounding the petitioner's plea, the record reflects that the plea was entered voluntarily and knowingly. The familiarity of the petitioner with criminal proceedings, albeit in juvenile court, supports a finding that he was aware of the significance of his plea. Before he entered the plea, the petitioner had obtained his high school diploma and had previous experience in the criminal justice system. The petitioner was also found to be competent to stand trial after two separate mental evaluations. Trial counsel was able to communicate with the petitioner and testified that the petitioner was able to assist in his defense and understood their discussions. Trial counsel explained the State's offer to the petitioner, including the provisions concerning his release eligibility. The transcript of the guilty plea hearing is included in the record and reflects that the trial court went over the plea carefully with the petitioner and specifically questioned him

several times about the release eligibility provision.  The petitioner told the court that he understood his rights and the State's offer.  The petitioner's reasons for his decision to plead guilty supports a finding that the plea was voluntary and knowing.  He testified that he accepted the State's offer and pleaded guilty to second degree murder because he felt the State had a strong first degree murder case against him.  These were decisions based on reason because the petitioner was aware that the case against him was strong. The petitioner is not entitled to relief on this issue.

Conclusion

Based on the foregoing and the record as a whole, we affirm the denial of relief from the post-conviction court.

 

 

_____
JOHN EVERETT WILLIAMS, JUDGE